**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

FOUNDATION AGAINST
INTOLERANCE & RACISM, INC.,

             Plaintiff,

   v.

MARY JANE PICKENS, in her official
capacity as Executive Director of the West
Virginia State Bar; SHANNON SMITH, in
her official capacity as President of the West
Virginia State Bar Board of Governors;
DAVID AMSBARY, in his official capacity
as President-Elect of the West Virginia State
Bar Board of Governors,

             Defendants.

Case No.  1:24-cv-115
Judge Thomas Kleeh

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' RENEWED MOTION TO DISMISS AMENDED COMPLAINT**

**I.        INTRODUCTION**

Defendants Mary Jane Pickens, Shannon Smith, and David Amsbary submit this memorandum of law in support of their Renewed Motion to Dismiss. The Court should dismiss the Amended Complaint of Plaintiff ("the Foundation") for three reasons. First, the Foundation lacks the necessary standing to maintain this action. Second, because it has named improper parties and failed to name proper parties, the Foundation has failed to state a claim upon which relief can be granted. Third, even if there was standing and these Defendants were proper parties, they are immune from suit. Separately, even if the Foundation could pursue this action, its claims do not fall within the ambit of the Fifteenth Amendment and must fail as a matter of law. In addition to these fatal defects, the Foundation has failed to provide proper notice of its constitutional

challenge, as required by Federal Rule of Civil Procedure 5.1.  Accordingly, the Court should dismiss the Amended Complaint with prejudice.

## II.    STATEMENT OF THE CASE AND RELEVANT FACTS

### A.    The West Virginia State Bar and Defendants

The West Virginia State Bar ("State Bar"), which is not a party to this case, is the agency of the Supreme Court of Appeals of West Virginia ("State Supreme Court") that regulates and controls the practice of law throughout the state. W. Va. Code § 51-1-4a(d).

### 1.    The Governing Documents of the State Bar

The West Virginia Constitution vests judicial power of the state solely in the State Supreme Court and in the circuit courts, intermediate appellate courts and magistrate courts, and in the justices, judges and magistrates of such courts. *See* W. VA. CONST. art. VIII, § 1; *see also* Order re: Approval and Adoption of Rev'ns to the Governance Docs. of the W. Va. State Bar (Dec. 30, 2019) (attached as "Exhibit 1"). Through its statutory, constitutional and inherent powers, the State Supreme Court created the West Virginia State Bar by enacting the State Bar's Administrative Rules and approving the agency's Constitution and Bylaws.[1]

---

[1] This memorandum examines these State Bar governing documents. Plaintiff's Amended Complaint refers to provisions in the State Bar Constitution, its Bylaws, and the Administrative Rules promulgated by the State Supreme Court. All are publicly available on the State Bar website. https://wvbar.org/constitution-bylaws-and-rules-and-regulations/#article17. Although courts may not usually consider documents outside of the complaint in ruling on motions to dismiss, there are exceptions. Courts can take judicial notice of regulations. See *Cosmos Expl. Co. v. Gray Eagle Oil Co.*, 190 U.S. 301 (1903). And courts "may take judicial notice of publicly available records without converting a motion to dismiss to one for summary judgment." *Weber v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:20-CV-48, 2021 U.S. Dist. LEXIS 40198, at *9 (N.D.W. Va. Mar. 4, 2021) (citing *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015)). See also *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). Courts may also consider "documents incorporated into the complaint by reference." *Katyle v. Penn Nat'l Gaming, Inc*., 637 F.3d 462, 466 (4th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (Courts "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.") (citing *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).

W. Va. Code § 51-1-4a provides for the State Supreme Court to "from time to time, prescribe, adopt, promulgate, and amend rules," and subsection (d) authorizes its creation of the State Bar:

> Organizing and governing by and through all of the attorneys at law practicing in this state, an administrative agency of the supreme court of appeals of West Virginia, which shall be known as "The West Virginia State Bar." The West Virginia State Bar shall be a part of the judicial department of the state government and is hereby created for the purpose of enforcing such rules as may be prescribed, adopted and promulgated by the court from time to time under this section. It is hereby authorized and empowered to perform the functions and purposes expressed in a constitution, bylaws and amendments thereto as shall be approved by the supreme court of appeals from time to time.

The State Bar's membership consists of "all persons lawfully admitted to practice law in the State of West Virginia." W. VA. STATE BAR CONST. art. III. As set forth in Article II, "Objects and Purposes," the State Bar's object is "to protect the interests of the public; to advance the administration of justice and the science of jurisprudence; to improve the relations between the public and the bench and the bar; to uphold and elevate the standard of honor, integrity, competency and courtesy in the legal profession; and to encourage cordial relations among its members." W. VA. STATE BAR CONST. (attached as "Exhibit 2"), at art. II. Its express purpose is "to give effect to pertinent rules of the Supreme Court of Appeals of West Virginia, to perform the functions expressed in this constitution and bylaws, and to perform such other functions as directed by the Supreme Court of Appeals of West Virginia." *Id.* Despite its role as an administrative agency of the court, the State Bar receives no State funding.[2]

Pursuant to W. Va. Code § 51-1-4a(d), the State Supreme Court promulgated administrative rules creating the State Bar and providing for its governance. *See* W. Va. State Bar Admin. R. (attached as "Exhibit 3"). Rule 1 provides:

---

[2] https://wvbar.org/about-us/.

> Pursuant to the Supreme Court of Appeal's [*sic*] inherent and exclusive authority to promulgate rules governing and regulating the practice of law in West Virginia, including the creation of the West Virginia State Bar in accordance with that authority and W.Va. Code § 51-1-4a, these West Virginia State Bar Administrative Rules are to be enforced by the West Virginia State Bar.

Ex. 3, W. Va. State Bar Admin. R., at R. 1. Consistent with this limitation, and Article II of its Constitution, State Bar Bylaw 10.12(a) empowers the State Bar to enforce but not to promulgate Rules:

> (a) Authority. In accordance with West Virginia Code §51-1-4a and the inherent authority of the Supreme Court of Appeals to regulate the practice of law under Article VIII of the West Virginia Constitution, the West Virginia State Bar is authorized to enforce the West Virginia State Bar Administrative Rules as adopted by the Supreme Court of Appeals. The former Rules and Regulations of the State Bar are abolished. The State Bar does not have independent authority to promulgate rules but does have the authority to publish and amend policies and procedures for the internal management of its operations.

W. Va. State Bar Bylaws (attached as "Exhibit 4"), at Bylaw 10.12(a). Instead, the Bylaws provide a mechanism for the Bar to propose Rule changes to the State Supreme Court. *Id.* at 10.12 (b, c).

Thus, to the extent that the State Bar seeks to alter or amend its Constitution or Bylaws, the State Supreme Court must authorize any such change or amendment. *See* Ex. 2, W. VA. STATE BAR CONST. art. VI; *see also* Ex. 4, Bylaws 11.01–11.02. Specifically, according to Bylaw 11.01, "*subject to the final approval by the Supreme Court of Appeals*, the [State Bar's] Constitution or these Bylaws may be altered or amended at any annual meeting by the State Bar membership, on recommendation of the Board, by vote of a majority of the members present or, without such recommendation, by vote of two thirds of the members present." Ex. 4, Bylaw 11.01 (emphasis added). Similarly, "[t]he Board may at any time recommend and submit to the members of the State Bar . . . proposed alterations or amendments to the Constitution and to the Bylaws of the State Bar, and such alterations or amendments shall become effective when approved by a majority

of the members voting, and *by the Supreme Court of Appeals*." Ex. 4, Bylaw 11.02 (emphasis added).

### 2. The State Bar Board of Governors

Article 5 of its Bylaws establishes that the State Bar is managed and administered by its Board of Governors ("Board"). *See* Ex. 4, Bylaws Art. 5 Bd. of Govs.; *see also* Ex. 2, W. Va. STATE BAR CONST. art. IV. The Board is comprised of twenty-six members: four officers (president, president-elect, vice-president, and immediate past president); one governor from each of the sixteen geographic State Bar Districts; three additional governors from District Eight; one African-American lawyer; the Chairperson of the Young Lawyer Section[3]; and the Dean of the West Virginia University College of Law (who is a non-voting member of the Board). Ex. 4, Bylaw 5.02.

Any active member of the State Bar may be elected to their District's Board seat(s). *Id.* at Bylaw 2.03. In State Bar Admin. R. 5, which addresses Elections and Referenda including Nominations for Governor, the Court provided for the election of an African-American lawyer to the Board of Governors. Ex. 3, Admin. R. 5.02. State Bar Bylaw 5 carries out this directive and provides for election to the seat created for African-American members of the State Bar, that is, those who self-identify as African-American, and only those who so identify may vote in the election for the seat. Ex. 4, Bylaw 5.06(b); Ex. 3, Admin. R. 5.02. Similarly, to be a member of the Young Lawyer Section whose Chairperson holds a Board seat, a State Bar member must be "either 35 years of age or under, or . . . have been admitted to practice ten years or less prior to the annual meeting of the . . . State Bar." *See* Ex. 4, Bylaw 13.01; Ex. 3, Admin. R. 13.01. The State

---

[3] "[The State Bar's Young Lawyer Section] is authorized to assist new lawyers in making the transition between law school and the practice of law by providing a means for personal and professional growth and encouraging participation in the activities of the Bar." See Ex. 4, Bylaw 17.01.

Supreme Court also created a seat on the Young Lawyers Section for an African-American member. Ex. 3, Admin. R. 13.03(f), 13.08; Ex. 4, Bylaw 17.01.

Any person seeking to join the Board of Governors must be nominated, either by petition or, if no petition is filed, by a committee appointed by the State Bar President. *See* Ex. 4, Bylaw 5.06.

The State Bar's governing documents provide avenues for grievances by members. The Bylaws establish Grievance Committees in each State Bar district to handle non-disciplinary grievances by State Bar members. *See* Ex. 4, Bylaws 9.01 and 9.02. Admin. R. 5.01 provides a mechanism to challenge elections:

> (e) Any nominee or candidate who is adversely affected by such a decision as to their nomination or as to the election, or any active or active non-practicing member of the State Bar who is adversely affected by such a decision as to their right to vote in any election, may appeal therefrom to the Board of Governors. The appeal shall be perfected by filing with the Executive Director a notice of appeal, containing a clear statement of the grounds on which the decision of the committee is alleged to be erroneous, within five days from transmittal of the decision as provided in Rule 5.01(d).

Ex. 3, Admin. R. 5.01(e). The Bylaws also establish that "Persons performing official duties under the provisions of these Bylaws . . . including, but not limited to . . . the Executive Director of the State Bar . . . shall be immune from suit for all conduct in the course of their official duties." *See* Ex. 4, Bylaw 8.08.

### 3.    Officers and Executive Director of the State Bar

The State Bar's Bylaws establish its officers, Executive Director, and their respective duties.[4] The President shall, among other things, serve as the chief executive officer of the State Bar; preside at all meetings of the State Bar; be the chair of the Board and preside at all of its

---

[4] The Administrative Rules provide for election of Governors, but do not expressly provide for officers and an Executive Director, except for references to the "President" and Executive Director taking certain actions. See e.g. Ex. 3, Admin. R. 5.01 (Prescribing duties of the President) and 5.02 (Prescribing duties of the Executive Director).

meetings; appoint, or recommend to the Board, suitable members for standing, special, and administrative committees and as chairperson of such committees; and from time to time recommend to the Board such changes as may seem advisable in the scope and function of committees and in their personnel. *See* Ex. 4, Bylaw 6.06. In turn, the President-Elect shall assist the President in the execution of certain duties; in the absence of the President, preside at all meetings of the Board and State Bar; and be responsible for the advancement of public acceptance of the State Bar program and coordinate the activities of all State Bar sections and committees engaging in the presentation of any part of such program to the public. *Id.* at Bylaw 6.07. Finally, the Executive Director shall, among other things, attend all meetings of the State Bar and the Board; report upon the activities of the State Bar during the past year and make such recommendations as the Executive Director shall deem proper; at each meeting of the Board, make such financial and other reports as the Board may require; and attend generally to the correspondence of the State Bar and perform such other duties as are directed by the Board. *Id.* at Bylaw 6.09. Significantly, the President, President-Elect, and Executive Director of the State Bar hold no individual role in the State Bar's rulemaking process. Rather, Article 11 of the Bylaws establishes that the Board or an individual member can submit a proposed amendment or referenda for consideration by the membership. *Id.* at Bylaws 11.01-11.03. However, even if the membership adopts a proposed amendment or referendum, final approval by the State Supreme Court is required. *Id.*

The State Bar's Executive Director and officers are not considered state officers or employees. In *Hinerman v. Daily Gazette Co.*, the State Supreme Court found that, for purposes of a defamation claim, a State Bar Vice-President/Board of Governors member did not qualify as a public official, because "he was elected by lawyers, not the public. . . ." 188 W. Va. 157, 180,

423 S.E.2d 560, 583 (1992). It also found he could not be designated a public official because he lacked "substantial responsibility for or control over the conduct of governmental affairs." *Id.* The Court explained that the State Bar officer "exerted no control over government affairs," noting that

> [t]he state bar is merely an advisory body to the [State Supreme Court]. The bar has no authority of its own. As requested by [the State Supreme] Court, the state bar can propose changes to the various rules of the Court, but its role is never more than that of an assistant or advisor to [the] Court. A second vice-president in such a body hardly has any "substantial responsibility" or control over government affairs.

*Id.*

The Amended Complaint names Defendant "Shannon Smith, in her official capacity as President of the West Virginia State Bar Board of Governors" and names Defendant "David Amsbary, in his official capacity as President-Elect of the West Virginia State Bar Board of Governors." Am. Compl., ECF 27, at 1. However, neither continues to serve in the capacity in which they were sued; on April 3, 2025, David Amsbary was sworn as President of the West Virginia State Bar Board of Governors, Robby Aliff was sworn as President-Elect of the West Virginia State Bar Board of Governors, and Shannon Smith became Immediate Past President.[5]

**B.    The Foundation Against Intolerance and Racism**

The Foundation self-identifies as a "nationwide grassroots organization that fights for equality for all individuals regardless of racial group membership." Am. Compl., at ¶ 4. The Foundation also alleges that it "engages in litigation to ensure that diversity and inclusion efforts are non-discriminatory." *Id*. at ¶ 8. On its website, the Foundation, a 501(c)(3) public charity[6] using the moniker "FAIR," similarly asserts it is "a nonprofit, nonpartisan organization committed to challenging threats to civil liberties from identity-based practices," whose mission is to "advocate[]

---

[5] https://wvbar.org/committees/boards/board-of-governors/.
[6] IRS Determination Letter, Feb. 28, 2023 (Online at https://www.fairforall.org/wp-content/uploads/2024/11/IRS-FAIR-501c3-Determination-Letter-2023.pdf).

for all individuals denied equal protection, free expression, and other fundamental rights, regardless of their personal background or immutable characteristics."[7] The Foundation says it takes aim at "identity-based programs" in part "through litigation that ensures diversity and inclusion efforts are non-discriminatory."[8] The Foundation espouses a larger purpose: "We file litigation that is winnable, precedent-setting, and can 'move the needle.'"[9]

Other than anonymous Members A and B, the Amended Complaint does not state how many other Foundation members, if any, are West Virginia residents, let alone how many are members of the West Virginia State Bar. The Foundation's website does not list its members. Although the Foundation's website lists "Local Chapters" in twenty-two U.S. states and in four Canadian provinces, there is no "Local Chapter" in West Virginia.[10] The lack of information as to the Foundation's membership is significant because, if the Foundation also has members (that is, those who are African-American members of the West Virginia State Bar) who would be hurt by successful litigation against the State Bar, then Fourth Circuit precedent would require this Court to deny standing to the Foundation. *See, e.g., Maryland Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1252–53 (4th Cir.), *cert. denied*, 502 U.S. 939 (1991) (denying standing due to conflicts between members who would benefit from successful litigation and members who would be hurt by successful litigation).

### C.    Amended Complaint

On December 19, 2024, the Foundation filed suit against the Defendants in their official capacities, challenging the constitutionality of the State Bar's African-American Representative seat on the Board of Governors. Compl., ECF 1, at ¶ 7. The Foundation amended its Complaint on

---

[7] https://www.fairforall.org/about-us/#our-mission.
[8] *Id*.
[9] https://www.fairforall.org/.
[10] https://www.fairforall.org/chapters/.

April 1, 2025. According to its Amended Complaint, two anonymous members of the Foundation, Member A and Member B, are "ready, willing, and able to apply and be considered for the [State Bar's] Board of Governors and are eligible to vote in Board of Governors elections but are disadvantaged because of their race."[11] Am. Compl.,  at ¶ 8. More specifically, even though Member A and Member B are eligible to be elected to the Board's District 16[12] and District 9[13] seats respectively, the Foundation alleges that Member A and Member B are not African-American and, thus, are "disqualified from nomination for and election to the African American seat." *Id*. at ¶¶ 9–10.  Otherwise, the Foundation claims that Member A and Member B  are "ready, willing, and able to be nominated for the African American seat." *Id*. The Foundation alleges that Member A and Member B are disqualified from voting in elections for this seat as well. *Id*. As such, the Foundation challenges the Bylaws establishing the State Bar's African-American Representative seat, arguing that the position violates the Fourteenth and Fifteenth Amendments of the United States Constitution. *Id*. at ¶¶ 34–63. What the Amended Complaint does not allege, however, is whether either anonymous member actually attempted to run for the African-American seat, or

---

[11] The Amended Complaint simply names anonymous members without explanation and without seeking leave from the court.  As to parties proceeding anonymously, "[t]he rule rather is that under appropriate circumstances anonymity may, as a matter of discretion, be permitted. This simply recognizes that privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this rare dispensation. A necessary corollary is that there is a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). There is no allegation that either A or B is a minor or any other information as to why their identities should be shielded. Considerations include "whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *Id*. at 238. *See Doe v. Sidar*, 93 F.4th 241, 243 (4th Cir. 2024) (Fourth Circuit held district court committed legal error in ordering plaintiff, who alleged she was sexually abused by the defendant, to use her real name, thereby understating the woman's interest in anonymity). Regardless of why Members A and B declined to name themselves, even if this Court determines they should be permitted to remain anonymous, it possesses the inherent power to require the members to reveal themselves under seal to the Court and Defendants. *See B.R. v. F.C.S.B.*, 17 F.4th 485, 496 (4th Cir. 2021).

[12] District 16 comprises Berkeley, Grant, Hampshire, Hardy, Jefferson, Mineral and Morgan counties.

[13] District 9 comprises Raleigh and Wyoming counties.

any Board seat for that matter, or whether either anonymous member ever utilized the grievance or election challenge provisions in the State Bar Bylaws. On these things, the Amended Complaint is silent. In response, Defendants move this Court to dismiss the Foundation's claims for the following reasons.

### III.    LEGAL STANDARD

#### A.    Standing

As the Fourth Circuit Court of Appeals recently reiterated,

> Article III of the Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies." U.S. CONST. art. III, § 2. Thus, it is a jurisdictional requirement that a person challenging a government action be a party to a live case or controversy.  This standing requirement "is an essential and unchanging part of the case-or-controversy requirement of Article III."

*Fluharty v. Phila. Indem. Co. (In re Levine)*, ___ F.4th ___, 2025 U.S. App. LEXIS 4487 *3-4 (4th Cir. Feb. 26, 2025) (internal citations omitted) (affirming dismissal of adversary proceeding due to bankruptcy trustees' lack of standing). "Article III standing is a 'bedrock constitutional requirement that [the United States Supreme] Court has applied to all manner of important disputes.'" *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 378 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)).

A lack of standing is appropriately challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which provides that a defendant may file a motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1), *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104, 118 S. Ct. 1003 (1998). Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n. 15 (4th Cir.1986). A facial attack challenges the sufficiency of the allegations in the complaint used to sustain the court's jurisdiction. *Id*. When confronted with such a motion,

allegations are to be taken as true and materials outside the pleadings are not considered. *Id*. A factual attack challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. *Id*. Where a motion to dismiss under Rule 12(b)(1) presents a factual challenge to the court's jurisdiction, a court need not assume that all facts alleged in the complaint are true. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) ("In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2004) ("[O]nce a factual attack is made on . . . subject matter jurisdiction, the district judge is not obliged to accept the plaintiff's allegations as true . . . ."). Moreover, a court may consider matters outside the pleadings in deciding whether it has jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) ("When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court . . . may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.") (internal citation omitted).

### B.    Legal Sufficiency

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). Although a complaint does not need detailed factual allegations, a plaintiff's obligation requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555. Well-pleaded facts do not include "legal conclusions drawn from the facts," "unwarranted inferences," or "unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). As the Fourth Circuit has summarized:

> Ultimately, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Facial plausibility is established once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible.

*Id*. at 255–56 (internal quotations and citations omitted).

### C.    Immunity

"Under West Virginia law, immunities 'are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all.'" *W. Va. Div. of Corrs. & Rehab. v. Robbins*, 248 W. Va. 515, 523, 889 S.E.2d 88, 96 (2023) (internal citation omitted).

> A State agency or public official is denied that right irrevocably if required to try a claim from which the agency or official is immune; '[t]he very heart of the immunity defense is that is spares the defendant from having to go forward with an inquiry into the merits of the case.' Due to that strong public policy, we have advised that '[p]ublic officials . . . . should be entitled to qualified immunity from suit . . . unless it is shown by specific allegations that the immunity does not apply.'

*Id.* (internal citations omitted). It is only "where 'the information contained in the pleadings is sufficient to justify the case proceeding further . . . [that] the early motion to dismiss should be denied.'" *Id.*

13

As the State Supreme Court noted in *Robbins*, "West Virginia's qualified immunity jurisprudence mirrors federal law." 248 W. Va. at 524, 889 S.E.2d at 97. As the *Robbins* court explained:

> In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 773 L.Ed.2d 396 (1982), the Supreme Court of the United States addressed qualified immunity, holding that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727. The Supreme Court has crafted a two-part test for courts to apply in ruling on a qualified immunity issue. The first inquiry is when "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If answered in the affirmative, then the second inquiry is "whether the right was clearly established[?]."

*Id.* (alteration in original).

## IV.     ARGUMENT

### A.     The Foundation fails to establish Article III standing.

As noted above, the judicial power vested by Article III of the Constitution extends only to "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. Thus, because federal courts are courts of limited jurisdiction, a plaintiff must first establish standing in order to bring suit. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish Article III standing, a plaintiff is required to show: "(1) an injury in fact (i.e., a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (i.e., a 'fairly . . . trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is 'likely' not merely 'speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 273 (2008).[14]

---

[14] The Fourth Circuit refers to these elements as "the irreducible constitutional minimum." *Fluharty*, 2025 U.S. App. LEXIS 4487 *4 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) and *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998)).

Ultimately, the plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these three elements and must clearly allege facts demonstrating that each element is met. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540 (2016).   Additionally, a plaintiff who raises multiple causes of action must establish standing separately for each claim. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018).

An organization may establish associational standing to sue on behalf of its members "even without a showing of injury to the association itself." *United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 552 (1996). Under this doctrine, an organization will establish standing to bring suit on behalf of its members when "at least one of its 'identified' members 'would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, 983 F.3d 671, 683 (4th Cir. 2020) (internal citation omitted).

The Foundation fails to establish associational standing to bring suit on behalf of Member A and Member B, necessitating dismissal of the matter.[15]

### 1.   The Foundation's members lack standing to sue in their own right.

#### a.   *Neither of the Foundation's anonymous members has suffered an injury-in-fact.*

It is well-settled that a plaintiff does not have standing to pursue a claim if they did not suffer "an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest)." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (quoting *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013)). An injury-in-fact must be "real and not abstract." *FDA*, 602 U.S.

---

[15] If the Court is not inclined to dismiss the Amended Complaint, it should allow only limited discovery, focused solely on Plaintiff's lack of standing.

at 367. The injury must also be particularized, meaning the injury must "'affect the plaintiff in a personal and individual way' and not be a generalized grievance." *Id*. (quoting *Lujan*, 504 U.S. at 559 n. 1). By requiring a plaintiff to demonstrate an injury-in-fact, "Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *Id*. at 381.

Federal courts repeatedly have held that "a failure to apply is fatal to claims that rest on the discriminatory denial of applications." *Spitalnick v. King*, No. JKB-24-1367, 2025 U.S. Dist. LEXIS 34037, at *9 (D. Md. Feb. 24, 2025); *see also Moose Lodge No. 106 v. Irvis*, 407 U.S. 163, 167 (1972) ("[I]n this case appellee was not injured by [the defendant]'s membership policy since he never sought to become a member."); *S. Blasting Servs., Inc. v. Wilkes Cnty.*, 288 F.3d 584, 595 (4th Cir. 2002) ("Here, plaintiffs have never even applied for a permit, much less been denied one. Therefore, they cannot demonstrate an actual injury. . . ."); *Ali v. Hogan*, 26 F.4th 587, 597–99 (4th Cir. 2022); *Byrd v. Loc. Union No. 24, Int'l Bhd. of Elec. Workers*, 375 F. Supp. 545, 558 (D. Md. 1974); *Davis v. Tarrant County*, 565 F.3d 214, 220 (5th Cir. 2009) ("In order to satisfy the standing requirement of an 'actual or imminent' injury, a plaintiff generally must submit to the challenged policy before pursuing an action to dispute it.").  For discriminatory barrier cases, the Supreme Court has interpreted the injury-in-fact requirement to mean that plaintiffs must be "able and ready" to pursue the opportunity at issue. *Carney v. Adams*, 592 U.S. 53, 60 (2020) (holding that plaintiff lacked standing to challenge Delaware's political affiliation requirement for judicial appointments because plaintiff did not show he was "able and ready to apply" for a judicial vacancy).

Whether a plaintiff is to be considered "able and ready" is "a legal determination, the bare recitation of which is not entitled to an assumption of truth." *Spitalnick*, 2025 U.S. Dist. LEXIS

34037, at *10. To satisfy this fact-intensive inquiry, a plaintiff must show "that, at the time of the asserted injury, they were 'likely to apply . . . in the reasonably foreseeable future,' had it not been for the allegedly discriminatory restriction." *Id*. at *10–11 (quoting *Carney*, 592 U.S. at 60, 63). Factors relevant to this determination include whether the plaintiff expressed any interest in applying or participating in the opportunity; whether they have previously applied for or took similar opportunities; whether they presently know, or have attempted to learn, of similar opportunities; whether they took steps to prepare or submit an application; and whether their actions "suggest 'a desire to vindicate [their] view of the law' rather than pursue the underlying opportunity." *Id*. at *11 (quoting *Carney*, 592 U.S. at 64). These considerations differentiate a plaintiff from a "general population of individuals affected in the abstract by the [restriction] [the plaintiff] attacks." *Id*. (quoting *Carney*, 592 U.S. at 64).

Here, the Foundation alleges, without more, that two of its members are "ready, willing, and able" to apply for or be considered for election to the African-American Representative seat on the State Bar's Board of Governors. Aside from the general objection that these members are unable to seek that position, the Amended Complaint does not allege any present effort taken by Member A or Member B to seek election to the Board, nor does it allege any facts indicating either Member's genuine intentions to do so. Nothing in the Amended Complaint suggests that Member A or Member B (1) expressed any interest in applying or participating in the opportunity; (2) had previously sought election to the Board; (3) presently know, or have attempted to learn, of similar opportunities for Board service; or (4) took steps to prepare or submit a nominating petition. To the contrary, the State Bar's public records regarding the 2025 Board of Governors election for District 9 reflect that only two State Bar members filed nominating petitions, and each nominee was female. *See* 2025 W. Va. State Bar Dist. 9 Nominating Petitions (attached as "Exhibit 5").

Because Paragraph 10 of the Amended Complaint identifies Member B as male, it is certain that Member B did not submit a nominating petition for his District's most recent election.[17] Otherwise, because the Foundation's members have chosen to conceal their identities, the only way for Defendants to discern whether Member A and Member B have taken any of the other abovementioned steps is for this Court to require the members to identify themselves.

Nor does the Amended Complaint allege any facts suggesting that either member filed a grievance, let alone exhausted the administrative remedies available to them in the State Bar's Bylaws. *See Daurelle v. Traders Fed. Sav. & Loan Ass'n*, 143 W. Va. 674, 104 S.E.2d 320 (1958) ("The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act."); W. VA. CONST. art. III.

The inaction of Member A and Member B suggests a desire to vindicate their view of the law rather than pursue the underlying opportunity, and it is insufficient to satisfy the fact-intensive inquiry required by *Carney* to demonstrate an injury-in-fact. Moreover, to the extent the Foundation has African-American members who are members of the West Virginia State Bar, then the Bylaw could not discriminate against those members, and the Foundation would lack standing.

Most importantly, as acknowledged in the Amended Complaint, the State Bar Bylaws plainly afford Member A and Member B the opportunity to run for a Board seat in their respective geographic State Bar Districts; yet, neither appears to have taken even that step to seek such a Board seat. Pursuant to State Bar Administrative Rule 5.01(e), Member A and Member B also had the opportunity to challenge any adverse decision concerning their nomination and election to the

---

[17] For example, the State Bar's public records regarding the 2022 Board of Governors election reflect that all four candidates for District 16 were male, but it is impossible to confirm what connection (if any) Member A might have had to the election for that Board of Governors seat.

Board. *See* Ex. 3, R. 5.01(e). Again, neither Member A nor Member B appears to have availed themself of this appeals process.

These facts alone confirm that no injury-in-fact has occurred, as evidenced by another recent Fourth Circuit decision affirming dismissal of a complaint due to lack of standing. *See Opiotennione v. Bozzuto Mgmt. Co.*, No. 21-1919, 2025 U.S. App. LEXIS 5007 (4th Cir. Mar. 4, 2025). In *Opiotennione*, the plaintiff challenged Facebook ads by a landlord which targeted users less than 50 years old. Plaintiff, age 55, sued alleging the advertising practices discriminated against her based on age. Despite the targeted advertising, the District Court dismissed the complaint because Plaintiff lacked standing to sue, finding no injury-in-fact because she was not denied access to the advertising nor prevented from obtaining the information about the apartments. *Id.* at *4. On appeal, the Fourth Circuit affirmed dismissal of the complaint, "agree[ing] with the district court that Opiotennione [ ] failed to allege facts plausibly demonstrating that she has suffered a concrete and particularized injury in fact traceable to Defendants' challenged conduct." *Id.* at *6-8. Significantly, Plaintiff argued "the discriminatory classification *itself* satisfies the injury-in-fact requirement. In her view, she need not do more than the allege that Defendants acted in a discriminatory manner to satisfy the injury-in-fact requirement here," but the Fourth Circuit disagreed. *Id.* at *7.

Member A and Member B are similar to plaintiff Opiotennione. None alleged a "particularized injury that is 'personal, individual, distinct, and differentiated.'" *Id.* at *8, citing *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007). Given that Member A and Member B otherwise could seek election to the State Bar Board of Governors, the Foundation has not pled facts showing how the alleged discrimination itself was a personal injury to them. *See Opiotennione v. Bozzuto Mgmt. Co.*, 2021 U.S. Dist. LEXIS 134989

at *16 (stating that, "when there exist ten paths to the same destination, an individual is not 'steered away' from that destination just because one of those paths—and certainly, here, not the most direct path—is obscured from her view."), *aff'd*, *Opiotennione*, 2025 U.S. App. LEXIS at 5007. Member A and Member B had, and still have, a direct path to seek a seat on the State Bar Board of Governors. Thus, the Foundation fails to establish that Member A and Member B have an injury-in-fact, as required by *Outdoor Amusement.*

> #### b. The Foundation fails to show causation, that is, a fairly traceable connection between the alleged injury-in-fact and the alleged conduct of the defendants.

Even if the Foundation could show an injury-in-fact to Member A and Member B, its Amended Complaint alleges no fairly traceable connection to the Defendants' alleged conduct. The Amended Complaint baldly alleges, with no factual support, that Defendants Pickens and Smith, in their respective official roles, are "responsible for implementing and enforcing [ ] racial exclusions in nominations, elections, and voting."[18] Am. Compl. at ¶¶ 11-12. The Amended Complaint's "FACTUAL ALLEGATIONS" section fails to allege any traceable connection between the alleged injury-in-fact and any Defendant's conduct. *Id.* at ¶¶ 13-22. Rather, in paragraphs 20-23, it merely quotes provisions of the State Bar Bylaws and Administrative Rules. *Id.* As discussed below, Defendants cannot individually implement and enforce these Bylaws and Rules; thus, any purported injury cannot be traced to a Defendant's actions. Accordingly, Plaintiff also fails to establish causation, as required by *Sprint Communs*.

Given the absence of (1) injury-in-fact to Member A and Member B and (2) causation, the Foundation cannot establish the first prong of associational standing.

---

[18] The Amended Complaint fails to include any specific allegation as to Defendant Amsbary. *See* Am. Compl. at ¶ 13.

### 2. The Foundation's organization purpose is not germane to the interests at stake.

Nor can the Foundation show that the interests it seeks to protect are "germane" to the organization's purpose, as required to satisfy the second prong of associational standing. See *Outdoor Amusement Bus. Ass'n*, 983 F.3d at 683 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). The germaneness requirement for associational standing complements the first prong by "demand[ing] that an association plaintiff be organized for a purpose germane to the subject of its member's claim [to] raise[] an assurance that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." *Dayton Area Chamber of Commerce v. Becerra*, 2024 U.S. Dist. LEXIS 141123, at *15 (S.D. Ohio Aug. 8, 2024), citing *United Food and Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555-56 (1996).

Noting that the concept of associational standing was created to allow an association to sue on behalf of its members that have suffered injury, the *Dayton* court determined that it was more appropriate to adopt a narrow interpretation of the interests at stake in the lawsuit, that is, "the constitutional rights of the affected members of the Plaintiff association[]." *Dayton*, at *17 (citing *Waskul*, 900 F.3d at 253). The court denied associational standing to the Dayton Area Chamber of Commerce after finding the Plaintiffs provided no information directly connecting the interests of the affected association members to the Chamber's stated purpose of improving the business climate in the Dayton area. *Dayton*, 2024 U.S. Dist. LEXIS 141123 at 18. Likewise, it denied associational standing to the Ohio Chamber of Commerce and the Michigan Chamber of Commerce because Plaintiffs had not explained how any named members had interests in Ohio or Michigan. *Id.* at *18-19.

Similarly, the interests the Foundation's suit seeks to vindicate regarding the State Bar are not germane to its purposes. The Amended Complaint espouses the Foundation's purpose of "defend[ing] the principle of equal protection and equal rights for all." Am. Compl. at ¶ 8. It claims the Foundation "engages in litigation to ensure that diversity and inclusion efforts are non-discriminatory." *Id.* It alleges the Foundation "also works at the grassroots level to promote a common culture based on equality and fairness." *Id.* These stated purposes are not germane inasmuch as the Foundation lacks evidence of "background circumstances" to support race-based discrimination claims by Member A and Member B. See *Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822 (6th Cir. 2023), *cert. granted*, 2024 U.S. LEXIS 3065 (Oct. 4, 2024).

In *Ames*, the Sixth Circuit affirmed an award of summary judgment, rejecting a heterosexual woman's claims under Title VII of the Civil Rights Act of 1964 that she was discriminated against based on her sexual orientation after she was allegedly denied a promotion and demoted in favor of LGBTQ+ candidates. 87 F.4th at 824. It affirmed the trial court's holding that her Title VII employment discrimination claims failed because she lacked evidence of "background circumstances" to support sex-based discrimination and lacked evidence of a pretext for sex discrimination. *Id.* at 825. The Sixth Circuit noted that Plaintiffs typically make a showing of "background circumstances" with evidence that a member of the relevant minority group made the decision at issue, or with statistical evidence showing a pattern of discrimination against members of the majority group. *Id.* (internal citations omitted).

Here, the Foundation's Amended Complaint includes no background circumstances. That is, it does not include statistical evidence showing a pattern of discrimination against white members of the State Bar. This fatal omission precludes a finding of associational standing as otherwise would be permitted by *Outdoor Amusement*.

### 3. The claim asserted and the relief requested require the participation of individual members in the lawsuit.

For the third prong of associational standing, *Outdoor Amusement* mandates for the plaintiff to show that *neither* the claims asserted, *nor* the relief requested, requires the participation of individual members in the lawsuit. The Foundation cannot do so here, because the converse is true: Individual members of the Foundation who also are members of the State Bar must participate in the lawsuit to pursue the claims asserted and the relief requested.

Overall, the Foundation has failed to allege sufficient facts to show its two members were "ready, willing, and able" to apply for election to the Board, where the claim asserted and the relief requested require the participation of individual members in the lawsuit. The Foundation's allegations thus "sound much more like general disagreements" with the existence of the African-American Representative seat than of purported violations of its member's constitutional rights. Additionally, the interests the Foundation seeks to protect are not germane to its purpose, and individual members would be required to participate in the lawsuit given the claims asserted and the relief requested. Therefore, regardless of how disgruntled the Foundation may be about this seat, the organization's own ideological objections are insufficient to confer it Article III standing.

### B. The Foundation has failed to state a legally sufficient claim upon which relief can be granted because it has named improper parties as Defendants and has failed to name proper parties as Defendants.

Even if the Foundation could establish Article III standing, its Amended Complaint must still be dismissed because the organization has sued the wrong parties. Pursuant to Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." A complaint brought against an improper party is subject to dismissal under this Rule. *See, e.g., Ellis v. Bradley Cty.*, 387 Fed. App'x 516, 516 (6th Cir. 2008) (dismissing plaintiff's claim against improper defendant for failure to state a claim); *Davis v. Abercrombie*, No. 11-00144, 2013 WL

5204982, at *14–15 (D. Haw. Sept. 13, 2013) (dismissing plaintiff's claims for injunctive and declaratory relief because defendant was not the proper party); *Benchick v. Loanstar Lending*, No. 10-CV-12996, 2012 WL 6150428, at *4–5 (E.D. Mich. Dec. 11, 2012) (dismissing plaintiff's claim because defendant could not remedy alleged violation); *Rogers v. Maricopa Cty. Sheriff's Office*, No. CV-07-641, 2008 WL 898721, at *2 (D. Ariz. Mar. 31, 2008) (holding defendant was not a proper party and was subject to dismissal for failure to state a claim upon which relief may be granted); *see also Consolidation Coal Co. v. United Mine Workers*, 2016 WL 3248427, at *3 (N.D. W. Va. June 10, 2016) (recognizing naming an improper party as one of defendant's Rule 12(b)(6) arguments).

Here, the Foundation simply has sued the wrong parties. As explained above, the State Bar's Bylaws are subject to final approval by the State Supreme Court. *See* Ex. 4, Bylaws 11.01–11.02.[19] Although the Board may recommend proposed amendments to the Bylaws, in fact, the State Supreme Court remains the final arbiter of these governing rules. *See* Ex. 2, W. VA. STATE BAR CONST. art. II; *see also* Ex. 4, Bylaws 11.01-11.02. This means the Bylaws at issue were promulgated by the State Supreme Court, not the State Bar, as is confirmed by Exhibit 1. As the State Supreme Court aptly described in *Hinerman*, "The state bar is merely an advisory body of the [State Supreme Court]. The bar has no authority on its own." 188 W. Va. at 180, 423 S.E.2d at 583. Further, in their official positions, Defendants do not have independent, individual authority to make changes to the State Bar's Bylaws. *See* Ex. 4, Bylaws 11.01-11.03 (allowing the Board or an individual member to submit a proposed amendment or referenda for consideration by the

---

[19] The Amended Complaint references the State Bar Administrative Rules where the State Supreme Court created the African-American seat on the Board of Governors, but not the corresponding seat on the Young Lawyers' Committee. See W. Va. State Bar Admin. R. 5 (creating African-American seat on Board) and 13.08 (creating African-American seat on Young Lawyers' Committee). The Bylaws enforce these Rules. See W. Va. State Bar Admin. R. 1 (The rules "are to be enforced by the West Virginia State Bar.").

membership). Nor can the Board unilaterally change the State Bar Administrative Rules. Therefore, because Defendants did not promulgate the State Bar's Administrative Rules or Bylaws, nor possess the authority to effectuate the change Plaintiff seeks, the Foundation has sued the wrong parties, failed to sue the proper parties, and its claims must be dismissed.

### C.    Defendants are immune from suit.

Even if Plaintiff had standing and Defendants were proper parties, the Amended Complaint must be dismissed because Defendants are immune from suit. Here, Defendants are immune for all conduct performed in the course of their official duties. *See* Ex. 4, Bylaw 8.08. Importantly, however, neither the State Bar's President, President-Elect, nor the Executive Director can engage in the conduct complained of by the Foundation. That is, no Defendant promulgates State Bar Bylaws or approves alterations or amendments to those Bylaws. *See* Ex. 4, Bylaws 11.01-11.03. Although the Foundation has challenged the Bylaw establishing the African-American Representative seat on the Board of Governors, only the State Supreme Court could have approved the promulgation of or amendment to that Bylaw. *Id.* As such, no individual Defendant could have engaged in conduct violating a clearly established constitutional right, the first prong of *Saucier* is not satisfied, Defendants are entitled to immunity pursuant to *Harlow*.

### D.    The Foundation's Fifteenth Amendment claim fails because the Amendment does not extend to State Bar elections.

Even presuming the Foundation possesses standing and has sued proper parties who are not immune from suit, its Fifteenth Amendment claim fails because the Amendment does not apply to the State Bar's elections. The Fifteenth Amendment to our nation's Constitution prohibits our federal and state governments from denying or abridging a citizen's right to vote "on account of race, color, or previous condition of servitude." U.S. CONST. amend. XV, § 1. The United States Supreme Court has explained that the Amendment extends to "any election in which public issues

are decided or public officials are selected." *Terry v. Adams*, 345 U.S. 461, 468 (1953). Contrary to the allegations in the Amended Complaint, and as noted above, the State Bar members elected to its Board are not public figures. *See Hinerman*, 188 W. Va. at 180, 423 S.E.2d at 583 (concluding a State Bar member was not a public official or public figure for the purpose of a defamation action). Not only are its Board members not considered public figures, but the State Bar's elections are also not open to the public – only members of the State Bar are permitted to cast their vote. Thus, the State Bar's elections do not fall within the ambit of the Fifteenth Amendment, and the Foundation's claim must fail as a matter of law.

E.    **In addition to the fatal defects in its pleading, the Foundation also has failed to comply with the notice requirements of Federal Rule of Civil Procedure 5.1 and has improperly sought an award of attorney's fees.**

Finally, the Foundation has neglected its obligations pursuant to Rule 5.1 of the Federal Rules of Civil Procedure and improperly sought an award of attorney's fees. When a party files a pleading challenging the constitutionality of a state statute, the Rule requires the party to promptly "file a notice of constitutional question stating the question and identifying the paper raising it if . . . the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity." Fed. R. Civ. P. 5.1. A party must then "serve the notice and paper on the . . . state attorney general." *Id*.

Like the plaintiff-appellant in *Hinerman*, Defendants Smith and Amsbary are similarly situated State Bar officers[20] (not public officials), while Defendant Pickens is a State Bar employee, not a State of West Virginia employee (nor a public official). Thus, the Foundation did not sue the State of West Virginia, one of its agencies, or a State officer or employee in an official

---

[20] Each remains a State Bar officer, although not the officer delineated in the Amended Complaint. *See* https://wvbar.org/committees/boards/board-of-governors/.

capacity; nor did it notify West Virginia's Attorney General of the constitutional challenge to the State Bar Bylaws promulgated by the State Supreme Court.

The Foundation claims entitlement to attorney's fees pursuant to 42 U.S.C. § 1988; however, that claim is inappropriate since Defendants are not public officials. See *Schwab v. Hansen*, 2017 U.S. Dist. LEXIS 190894, *12 (E.D. Va. Nov. 16, 2017) (granting Rule 12(b)(1) and 12(b)(6) motion to dismiss of private citizen wrongly named as public official in § 1983 suit, and thus rejecting plaintiff's claim for attorney's fees).

### V.    CONCLUSION

For all the foregoing reasons, Defendants Mary Jane Pickens, Shannon Smith, and David Amsbary respectfully request the Court to grant their renewed motion and enter an order dismissing the Amended Complaint against them with prejudice.

  */s/ Shawn A. Morgan*
Shawn A. Morgan, Esq. (WVSB #6640)
Chase Riggs  (WVSB #14678)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, West Virginia 26330
304-933-8000 - telephone
304-933-8183 – facsimile
*shawn.morgan@steptoe-johnson.com*
*chase.riggs@steptoe-johnson.com*

Thomas J. Hurney, Jr., Esq. (WVSB #1833)
Caroline G. Massie, Esq. (WVSB #14651)
JACKSON KELLY, PLLC
P.O. Box 553
Charleston, West Virginia 25322-0553
(304) 340-1000 – telephone
(304) 340-1050 – facsimile
*thurney@jacksonkelly.com*
*caroline.massie@jacksonkelly.com*
Kevin J. Robinson, Esq. (WVSB #10181)
PULLIN FOWLER FLANAGAN BROWN
& POE, PLLC
252 George Street

Beckley, West Virginia 25801
(304) 254-9300 – telephone
(304) 255-5519 – facsimile
*krobinson@pffwv.com*

Marc E. Williams, Esq. (WVSB #4062)
Shaina D. Massie, Esq. (WVSB #13018)
Anna J. Williams, Esq. (WVSB #14705)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
949 Third Ave.
Suite 200
Huntington, WV 2570
(304) 526-3500 – telephone
(304) 526-3599 – facsimile
*marc.williams@nelsonmullins.com*
*shaina.massie@nelsonmullins.com*
*anna.williams@nelsonmullins.com*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

FOUNDATION AGAINST
INTOLERANCE & RACISM, INC.,

                Plaintiff,

    v.

MARY JANE PICKENS, in her official
capacity as Executive Director of the West
Virginia State Bar; SHANNON SMITH, in her
official capacity as President of the West
Virginia State Bar Board of Governors; DAVID
AMSBARY, in his official capacity as
President-Elect of the West Virginia State Bar
Board of Governors,
                Defendants.

Case No.  1:24-cv-115
Judge Thomas Kleeh

## CERTIFICATE OF SERVICE

      I, the undersigned, counsel for Defendants Mary Jane Pickens, Shannon Smith, and David

Amsbary do hereby certify that on this 15th day of April 2025, I electronically filed the foregoing

"MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO

DISMISS AMENDED COMPLAINT" with the Clerk of the Court using the CM/ECF system

which will send notification of such filing to the following CM/ECF participants:

                Martin P. Sheehan
                Sheehan and Associates, PLLC
                1140 Main St Suite 333
                Wheeling, West Virginia 26003
                Telephone: (304) 232-1064
                *martin@msheehanlaw.net*

                Joshua P. Thompson *(admitted Pro Hac Vice)*
                Pacific Legal Foundation
                555 Capitol Mall, Suite 12930
                Sacramento, CA 95814
                Telephone: (916) 419-7111
                *JThompson@pacificlegal.org*

Samantha R. Romero *(admitted Pro Hac Vice)*
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
*SRomero@pacificlegal.org*

*Counsel for Plaintiff*

   */s/ Shawn A. Morgan*
Shawn A. Morgan, Esq. (WVSB #6640)
Chase Riggs  (WVSB #14678)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, West Virginia 26330
304-933-8000 - telephone
304-933-8183 – facsimile
*shawn.morgan@steptoe-johnson.com*
*chase.riggs@steptoe-johnson.com*