IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FOUNDATION AGAINST
INTOLERANCE & RACISM, INC.,

      Plaintiff,

    v.                                CIVIL NO. 1:24-CV-115
                                         (KLEEH)

MARY JANE PICKENS et al.,

      Defendants.

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

Pending before the Court is a motion to dismiss the amended complaint. For the reasons discussed herein, the motion is **DENIED**.

## I.   INTRODUCTION AND PROCEDURAL HISTORY

The Plaintiff, the Foundation Against Intolerance & Racism ("FAIR"), brings this action under 42 U.S.C. § 1983 against the following Defendants: Mary Jane Pickens, as the Executive Director of the West Virginia State Bar; David Amsbary, as the President of the West Virginia State Bar Board of Governors; and Robby Aliff, as the President-Elect of the West Virginia State Bar Board of Governors (together, "Defendants").[1] Defendants are sued in their official capacities. FAIR alleges that Defendants have violated the Fourteenth and Fifteen Amendments to the United States

---

[1] FAIR originally named Shannon Smith and David Amsbary as the President and President-Elect, but on April 3, 2025, Amsbary was sworn in as President and Aliff was sworn in as President-Elect.

FAIR V. PICKENS ET AL.                                          1:24-CV-115

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

Constitution by enforcing State Bar Bylaws that reserve one seat on the State Bar Board of Governors for an African-American representative and allow only African Americans to vote in the election for that Board seat.

On December 19, 2024, FAIR filed the original complaint. On April 1, 2025, FAIR filed an amended complaint. On April 16, 2025, Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The motion is fully briefed and ripe for review.

### II.  FACTUAL BACKGROUND

The West Virginia Constitution vests judicial power of the state solely in the Supreme Court of Appeals of West Virginia ("State Supreme Court"), circuit courts, intermediate appellate courts, and magistrate courts, as well as in the justices, judges, and magistrates of those courts. See W. Va. Const. art. VIII, § 1. The West Virginia Code provides that the State Supreme Court "shall, from time to time, prescribe, adopt, promulgate, and amend rules," and it authorizes the State Supreme Court's creation of the State Bar as its administrative agency:

> Organizing and governing by and through all of the attorneys at law practicing in this state, an administrative agency of the Supreme Court of Appeals of West Virginia, which shall be known as "The West Virginia State bar." The West Virginia State Bar shall be a part of the

2

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

---

> judicial department of the state government
> and is hereby created for the purpose of
> enforcing such rules as may be prescribed,
> adopted and promulgated by the court from time
> to time under this section.  It is hereby
> authorized and empowered to perform the
> functions and purposes expressed in a
> constitution, bylaws and amendments thereto as
> shall be approved by the Supreme Court of
> Appeals from time to time.  All persons
> practicing law in this state shall be members
> of the West Virginia State Bar in good
> standing: Provided, however, That the West
> Virginia State Bar shall not become operative
> until its constitution and bylaws shall first
> have been submitted to all attorneys at law
> practicing in this state, including those
> presently serving in the armed forces of the
> United States, for the purpose of securing the
> suggestions and recommendations of all such
> attorneys at law, for a period of at least
> sixty days prior to the entry of an order by
> such court approving said constitution and
> bylaws.

W. Va. Code § 51-1-4a(d).

    As set forth in the State Bar Constitution, the State Bar's

objects are "to protect the interests of the public; to advance

the administration of justice and the science of jurisprudence; to

improve the relations between the public and the bench and the

bar; to uphold and elevate the standards of honor, integrity,

competency and courtesy in the legal profession; and to encourage

cordial relations among its members."  Exh. 2, ECF No. 36-2, at

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

art. II.[2]  Its purpose is "to give effect to pertinent rules of
the Supreme Court of Appeals of West Virginia, to perform the
functions expressed in [the State Bar] constitution and bylaws,
and to perform such other functions as directed by the Supreme
Court of Appeals of West Virginia." Id.

The State Supreme Court has promulgated Administrative Rules
creating the State Bar and providing for its governance. See Exh.
3, ECF No. 36-3.  Rule 1 provides,

> Pursuant to the Supreme Court of Appeal's
> [*sic*] inherent and exclusive authority to
> promulgate rules governing and regulating the
> practice of law in West Virginia, including
> the creation of the West Virginia State Bar in
> accordance with that authority and W. Va. Code
> § 51-1-4a, these West Virginia State Bar
> Administrative Rules are to be enforced by the
> West Virginia State Bar.

Id. at Rule 1.  The State Bar Bylaws empower the State Bar to
enforce but not to promulgate Rules:

> In accordance with West Virginia Code § 51-1-
> 4a and the inherent authority of the Supreme
> Court of Appeals to regulate the practice of
> law under Article VIII of the West Virginia
> Constitution, the West Virginia State Bar is
> authorized to enforce the West Virginia State
> Bar Administrative Rules as adopted by the
> Supreme Court of Appeals.  The former Rules
> and Regulations of the State Bar are
> abolished.  The State Bar does not have
> independent authority to promulgate rules but

---

[2] Defendants' memorandum in support is the only brief with exhibits
attached, so all exhibit numbers referenced herein refer to the
memorandum's exhibits.

> does have the authority to publish and amend
> policies and procedures for the internal
> management of its operations.

Exh. 4, ECF No. 36-4, at Bylaw 10.12(a).  The State Bar Bylaws also provide a mechanism for the State Bar to propose Rule changes to the State Supreme Court.  Id. at Bylaws 10.12(b) and (c).  If the State Bar seeks to alter or amend its Constitution or Bylaws, the State Supreme Court must authorize any such change or amendment.  See Exh. 2, ECF No. 36-2, at art. VI; see also Exh. 4, ECF No. 37-4, at Bylaws 11.01-11.02.

### Board of Governors

Article 5 of the State Bar Bylaws establishes that the State Bar is managed and administered by its Board of Governors (the "Board").  See Exh. 4, ECF No. 36-4, at art. V.  Any person seeking to join the Board must be nominated, either by petition or, if no petition is filed, by a committee appointed by the State Bar President.  Id. at Bylaw 5.06(a).  The Board is comprised of twenty-six (26) members: four (4) officers (president, president-elect, vice-president, and immediate past president); one (1) governor from each of the sixteen (16) geographic State Bar districts; three (3) additional governors from District Eight; one (1) African-American lawyer; the Chairperson of the Young Lawyer Section, and the Dean of the West Virginia University College of Law (who is a non-voting member of the Board).  Id. at Bylaw 5.02.

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

Terms for each elected seat are four years, and yearly elections are staggered in four-year cycles. Id. at Bylaw 5.03.

State Bar Administrative Rule 5, which addresses elections and referenda, including nominations for governors, provides for the election of an African-American representative to the Board. See Exh. 3, ECF No. 36-3, at Rule 5.02. The State Bar Bylaws carry out this directive, and only those who self-identify as African American may vote in the election for the African-American seat. See Exh. 4, ECF No. 36-4, at Bylaw 5.06(b). The Executive Director receives nomination petitions as part of the elections process. Id. at Bylaw 5.06(a). In each year in which the election for the African-American seat is to be held, on or before January 20, the Executive Director identifies African Americans registered with the State Bar and notifies them of the nomination process. Id. at Bylaw 5.06(b); see also Exh. 3, ECF No. 36-3, at Rule 5.02(b). If the Executive Director does not receive a petition nominating an African American, the President appoints a committee to nominate two eligible African-American attorneys for that year's election. Exh. 4, ECF No. 36-4, at Bylaw 5.06(b). The last election cycle for the African-American seat concluded on March 20, 2025. See Am. Compl., ECF No. 27, at ¶ 25. The next election cycle for the African-American seat is in 2029. Id. ¶ 27.

FAIR V. PICKENS ET AL.                                    1:24-CV-115

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

### Officers and Executive Director

The State Bar Bylaws establish the roles of the State Bar officers and Executive Director, as well as their respective duties.  The President is the chief executive officer of the State Bar and must faithfully endeavor to accomplish a successful prosecuting of its objects, aims, and purposes, including the election for the African-American seat on the Board.  Exh. 4, ECF No. 36-4, at Bylaw 6.06.  The President shall, among other things, preside at all meetings of the State Bar; serve as the chair of the Board and preside at all Board meetings; appoint or recommend to the Board suitable members to participate in committees; and, from time to time, recommend to the Board such changes as may seem advisable in the scope and function of committees and in their personnel.  Id.  The President-Elect assists the President in the execution of those duties and shall perform such duties and have such authority as may be prescribed from time to time by the Board. Id. at Bylaw 6.07.  The President-Elect presides at all meetings of the Board and State Bar in the absence of the President; is responsible for the advancement of public acceptance of the State Bar program; and supervises and coordinates the activities of all State Bar sections and committees engaging in the presentation of any part of such program to the public.  Id.  The Executive Director shall, among other things, attend all meetings of the State Bar

FAIR V. PICKENS ET AL.                                              1:24-CV-115

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

and the Board; report upon the activities of the State Bar during the past year and make such recommendations as the Executive Director shall deem proper; make financial and other reports at Board meetings as the Board may require; attend generally to the correspondence of the State Bar; and perform such other duties as are directed by the Board.  Id. at Bylaw 6.09.

Specifically, FAIR challenges portions of State Bar Bylaws 5.02, 5.06, and 5.07, which are set forth here in full:

#### Bylaw 5.02

The Board of Governors shall consist of the following twenty-five voting members and one non-voting member:

(a)  The president, president-elect, vice president, and immediate past president;

(b)  One governor from each of the sixteen State Bar districts set forth in Bylaw 5.04;

(c)  Three additional governors from State Bar District Eight;

(d)  One African-American lawyer elected as described in Bylaw 5.06;

(e)  The Chairperson of the Young Lawyer Section; and

(f)  The Dean of the West Virginia University College of Law, as a non-voting member.

#### Bylaw 5.06

(a)  Nomination for the office of governor shall be by written petition signed by not less than ten members of the State Bar

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

eligible to vote in the district where such nominee is qualified for office, except that where there are fewer than ninety eligible members in the district, the signatures of ten percent of the members shall be sufficient. No member shall sign more than one nominating petition in any year. If in any year the Executive Director does not receive, within the time fixed by the Board, from any state bar district for which a governor is to be elected in that year, a petition nominating an eligible person for governor, the President shall appoint a committee from the Board, and that committee shall nominate at least two eligible persons.

(b) In each year in which an African-American lawyer is to be elected as a governor, the Executive Director shall identify African-American lawyers so registered with the State Bar and send them a notice regarding the nomination for the position on the Board of Governors. Nomination for the position shall be by written petition signed by not less than ten African-American members of the State Bar eligible to vote, except that if there are fewer than ninety eligible African American lawyers in the state, the signatures of ten percent of the African-American lawyers shall be sufficient. No African-American lawyer shall sign more than one nominating petition in any year. If in any year the Executive Director does not receive, within the time fixed by the Board, a petition nominating an African-American lawyer for governor, the President shall appoint a committee from the Board, and that committee shall nominate at least two eligible African-American lawyers.

**Bylaw 5.07**

Each district governor shall be elected by an electronic vote of the active members having their principal offices for the practice of the law in the State Bar district and active

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

non-practicing members whose mailing
addresses of record are in that district.
Each governor in the African-American lawyer
position shall be elected by an electronic
vote of the African-American lawyers so
registered who are active members and active
nonpracticing members of the State Bar. Such
elections shall be conducted and canvassed,
and any tie votes determined, in accordance
with State Bar Administrative Rule 5.05.

### III. ALLEGATIONS

In the amended complaint, FAIR alleges that Defendants
enforce State Bar Bylaws that unlawfully set aside a seat on the
Board for an African-American attorney and unlawfully permit only
African Americans to vote in the election for the African-American
seat. Am. Compl., ECF No. 27, at ¶ 2. FAIR describes itself as
a "nationwide grassroots organization that fights for equality for
all individuals regardless of racial group membership." Id. ¶ 4.
It asserts that it has members who are "ready, willing, and able"
to be nominated to the Board and to vote in all Board elections
for which they are eligible. Id. FAIR seeks to "vindicate its
members' rights to equal protection and end the Board's state-
sponsored racial discrimination." Id. ¶ 5. It asserts that "[b]y
implementing and enforcing race-based exclusions for nominations,
elections, and voting, the State Bar and the Board violate FAIR's
members' constitutional rights." Id. Specifically, FAIR brings

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

challenges under the Fourteenth and Fifteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Id. ¶ 6.

FAIR asserts that "Member A" resides in West Virginia, has a principal office for the practice of law in West Virginia, is a member of the West Virginia Bar, and is not African American. Id. ¶ 9. Member A is eligible to be elected to the District 16 seat on the Board. Id. That seat is next up for election in 2026. Id. FAIR asserts that Member A "was and will continue to be disqualified from nomination for and election to the African American seat solely because of his race," but he is "otherwise ready, willing, and able to be nominated for the African American seat." Id. FAIR asserts that Member A "was and will continue to also be disqualified from voting in elections for that seat because of his race." Id.

FAIR asserts that "Member B" resides in West Virginia, has a principal office for the practice of law in West Virginia, is a member of the West Virginia Bar, and is not African American. Id. ¶ 10. Member B is eligible to be elected to the District 9 seat on the Board. Id. That seat is next up for election in 2029. Id. FAIR asserts that Member B "was and will continue to be disqualified from nomination for and election to the African American seat solely because of his race," but he is "otherwise ready, willing, and able to be nominated for the African American

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

seat." Id.  FAIR asserts that Member B "was and will continue to also be disqualified from voting in elections for that seat because of his race." Id.

FAIR has sued Defendants in their official capacities only. It sues Defendant Pickens, as the Executive Director, stating that she is "responsible for implementing and enforcing the racial exclusions in nominations, elections, and voting." Id. ¶ 11.  FAIR sues Defendant Amsbary, as President, stating that he "is responsible for enforcing the Bylaws implementing and enforcing racial exclusions in nominations, elections, and voting." Id. ¶ 12.  FAIR sues Defendant Aliff, as President-Elect, asserting that he assists the President in the execution of his or her duties. Id. ¶¶ 13, 23.

FAIR brings the following causes of action:

- Count One: Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Bylaws 5.02(d), 5.06(b), and 5.07);

- Count Two: Violation of the Citizenship Clause of the Fourteenth Amendment to the United States Constitution (Bylaws 5.02(d), 5.06(b), and 5.07); and

- Count Three: Violation of the Fifteenth Amendment to the United States Constitution (Bylaw 5.07).

FAIR requests the following relief:

FAIR V. PICKENS ET AL.                                    1:24-CV-115

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

- A declaration that the racial exclusions in Bylaws 5.02(d), 5.06(b), and 5.07 violate the Equal Protection Clause and the Citizenship Clause of the Fourteenth Amendment to the United States Constitution;

- A declaration that the race-based abridgement of the right to vote in Bylaw 5.07 violates the Fifteenth Amendment to the United States Constitution;

- A permanent prohibitory injunction forbidding Defendants and Defendants' officers, agents, affiliates, servants, successors, employees, and all other persons in active concert or participation with Defendants from enforcing, or attempting to enforce, the racial exclusions in Bylaws 5.02(d), 5.06(d), and 5.07; and

- An award of attorney's fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988.

### IV.   STANDARDS OF REVIEW

#### Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows the Court to dismiss an action for lack of jurisdiction over the subject matter.  A plaintiff bears "the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted).  In considering a motion to dismiss pursuant to Rule 12(b)(1), the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting

13

FAIR V. PICKENS ET AL.                                          1:24-CV-115

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

the proceeding to one for summary judgment." Id. (citation omitted). The court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citation omitted). When a defendant asserts multiple defenses, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (citations and internal quotation marks omitted).

### Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (citations omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Factual allegations must be sufficient "to raise a right to relief

FAIR V. PICKENS ET AL.                                          1:24-CV-115

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 545.  Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).

V.    DISCUSSION

Defendants argue that the Court should dismiss the amended complaint in its entirety because (1) FAIR lacks standing, (2) FAIR has failed to name the proper parties, (3) Defendants are immune from suit, (4) the Fifteenth Amendment does not extend to State Bar elections, and (5) FAIR has failed to provide proper notice of its constitutional challenge.  For the reasons discussed below, the Court disagrees.

A.   **FAIR has established associational standing because Member A and Member B have standing in their own right, their interests are germane to FAIR's purpose, and their individual participation is not required.**

The judicial power vested by Article III of the Constitution extends only to "cases" and "controversies." U.S. Const. art. III, § 2.  Because federal courts are courts of limited

15

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

jurisdiction, a plaintiff must first establish standing in order

to bring suit.  See Clapper v. Amnesty Int'l USA, 568 U.S. 398,

408 (2013).  To establish Article III standing, a plaintiff is

required to show the following:

> (1) an injury in fact (i.e., a concrete and
> particularized invasion of a legally protected
> interest); (2) causation (i.e., a fairly
> traceable connection between the alleged
> injury in fact and the alleged conduct of the
> defendant); and (3) redressability (i.e., it
> is likely and not merely speculative that the
> plaintiff's injury will be remedied by the
> relief plaintiff seeks in bringing suit).

Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273–

74 (2008) (citations and internal punctuation omitted).

Ultimately, the plaintiff, as the party invoking federal

jurisdiction, bears the burden of establishing these three

elements and must clearly allege facts demonstrating that each

element is met.  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

An organization may establish associational standing to sue on

behalf of its members "even without a showing of injury to the

association itself[.]"  United Food & Com. Workers Union Local 751

v. Brown Grp., Inc., 517 U.S. 544, 552 (1996).  To establish

associational standing, a plaintiff-organization must show (1)

that "its members would otherwise have standing to sue in their

own right"; (2) that "the interests at stake are germane to the

organization's purpose"; and (3) that "neither the claim asserted

FAIR V. PICKENS ET AL.                                    1:24-CV-115

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 181 (2000) (citation omitted). Here, the requirements of associational standing are satisfied.

> **1.    Member A and Member B have standing in their own right because FAIR has sufficiently pled injury-in-fact and causation.**

For the reasons discussed below, FAIR has sufficiently alleged that Member A and Member B have suffered an injury-in-fact, and the injury-in-fact is traceable to Defendants. Defendants do not challenge redressability in their motion. Based on the record before the Court, there is nothing to indicate that redressability is not satisfied, so the Court will not address it herein.

> **a.    Injury-in-Fact[3]**

An injury-in-fact must be "real and not abstract." FDA v. Alliance for Hippocratic Med., 602 U.S. 367, 381 (2024) (citation omitted). The injury must also be "particularized," meaning that

---

[3] Defendants focus their injury-in-fact argument on Member A's and Member B's inability to run for the African-American seat but do not address Member A's and Member B's inability to vote in the election for the African-American seat. Based on the record before the Court, there is nothing to indicate that injury-in-fact with respect to the Fifteen Amendment claim does not exist, and the Court will not address it herein.

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

the injury must "affect the plaintiff in a personal and individual way and not be a generalized grievance." Id. (citation and internal quotation marks omitted). "By requiring the plaintiff to show an injury-in-fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." Id. Here, Defendants argue that FAIR has not pled sufficient facts to show that Member A and Member B have been personally harmed and are not merely raising an ideological objection to the challenged State Bar Bylaws. Defendants argue that Member A and Member B were required to apply and be rejected from consideration for the Board seat in order to establish an injury-in-fact. After reviewing Supreme Court precedent in Equal Protection cases, the Court disagrees. By way of background, the Fourteenth Amendment, in relevant part, provides,

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

In Turner v. Fouche, a Georgia law limited school board membership to property owners, and the plaintiffs, who did not own property, brought a class action Equal Protection challenge. 396 U.S. 346 (1970). The State of Georgia argued that standing did not exist because it was not shown that the property ownership requirement had ever operated to exclude anyone from the board of education. Id. at 361 n.23. The Supreme Court rejected this argument, finding that the plaintiffs had standing because it was undisputed that at least one class member did not own property, and Georgia could "hardly urge that her county officials may be depended on to ignore a provision of state law." Id.

In Clements v. Fashing, a provision in the Texas Constitution provided for the automatic resignation of certain state officeholders upon an announcement of their candidacy for another office. 457 U.S. 957 (1982). The plaintiffs, who were state officeholders, brought an Equal Protection challenge. Id. at 957. They had not announced their candidacies for another office; rather, they alleged that they would have announced their candidacies were it not for the consequences of doing so. Id. at 962. The Court found that the dispute was not "merely hypothetical" and found that the plaintiffs' allegations were sufficient to establish standing. Id.

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

In Quinn v. Millsap, the Missouri Constitution required an individual to own real property in order to serve on a governmental board.  491 U.S. 95 (1989).  The plaintiffs, who did not own real property, filed a class action Equal Protection challenge on behalf of all Missouri voters who did not own real property.  Id. at 98.  The Supreme Court, finding that the class members had standing, wrote, "[I]n Turner v. Fouche, we specifically held that a person who does not own real property has Article III standing to challenge under the Equal Protection Clause a state-law requirement that one own real property in order to serve on a particular government board."  Id. at 103.   The Court further wrote of the right, also recognized in Turner, "to be considered for public service without the burden of invidiously discriminatory disqualifications."  Id. at 105 (citing Turner, 396 U.S. at 362).

In Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, a Jacksonville ordinance required that 10% of the amount spent on city contracts be set aside each fiscal year for so-called "Minority Business Enterprises" ("MBEs").  508 U.S. 656 (1993).  The plaintiff, a contractors association (most of whose members did not qualify as MBEs), brought an Equal Protection challenge.  Id. at 659.  The association alleged that many of its members regularly bid on and

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

performed construction work for the City and "would have . . . bid on . . . designated set aside contracts but for the restrictions imposed" by the ordinance.  Id.  The Supreme Court wrote, "The injury-in-fact in an equal protection case . . . is the denial of equal treatment resulting from the imposition of the barrier," which was, in that case, "the inability to compete on an equal footing in the bidding process[.]"  Id. at 666.  The Court wrote that the plaintiff needed only demonstrate that its members were "able and ready to bid on contracts and that a discriminatory policy prevents them from doing so on an equal basis."  Id.

Finally, in Gratz v. Bollinger, two white in-state applicants to the University of Michigan brought an Equal Protection challenge with respect to the University's use of racial preferences in undergraduate admissions.  539 U.S. 244 (2003).  One of the students, after being denied admission, alleged that he was "able and ready" to apply as a transfer student.  Id. at 262.  The Supreme Court explicitly rejected the argument that in order to show an injury-in-fact, the student was required to apply for admission as a transfer student.  Id. at 260-61 (stating that "whether [the student] 'actually applied' for admission as a transfer student is not determinative of his ability to seek injunctive relief in this case").

21

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 34]**

An outlier in the Court's review of Equal Protection cases is
Moose Lodge No. 107 v. Irvis, which is cited by Defendants in their
memorandum.  The plaintiff, as the guest of a member of a private
club, was refused service at the club's dining room due to his
race.  407 U.S. 163, 164 (1972).  He brought an Equal Protection
challenge, asserting that the Pennsylvania liquor board's issuance
of a liquor license to the club made the discrimination state
action for Equal Protection purposes.  Id. at 165.  The district
court ruled in favor of the plaintiff, finding that the club's
membership policies — in addition to its policies pertaining to
guests — were unconstitutional.  Id. at 166.  The Supreme Court
found that the plaintiff lacked standing to challenge the
membership policy because he "never sought to become a member."
Id. at 167.  The Court found that he only had standing to challenge
the policies regarding the serving of guests.  Id. at 166.  In
reading the decision, it is unclear whether the plaintiff pleaded
that he wanted to become a member.  This Court acknowledges that
Irvis is inconsistent with the other Equal Protection cases
discussed above, but it also notes all except Turner were decided
after Irvis, and they do not mention or cite Irvis.

Turner, Clements, Quinn, Associated General Contractors, and
Gratz — all Equal Protection cases — did not require the
plaintiff(s) to apply for a position, announce a candidacy, or bid

FAIR V. PICKENS ET AL.                                    1:24-CV-115

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

on a project in order to establish an injury-in-fact. Rather, the cases appear to stand for the notion that the existence of a discriminatory barrier is the injury-in-fact. While it is clear that a plaintiff must be "able and ready" to be considered, this does not equate to a requirement that a plaintiff apply to be considered for a position from which he is explicitly excluded. Here, FAIR alleges that Defendants enforce State Bar Bylaws reserving one seat on the Board for an African-American representative. FAIR alleges that Member A and Member B were "ready, willing, and able" to be elected to the Board in 2025 but were disqualified for the African-American seat in 2025 due to their race. FAIR also alleges that Member A and Member B "will be ready, willing, and able" to be elected to the Board in 2029 but will be disqualified for the African-American seat opening in 2029 due to their race. FAIR has sufficiently alleged that a discriminatory barrier exists, and injury-in-fact is satisfied.[4]

Defendants argue that because other Board seats are available, Member A and Member B have not suffered an injury-in-fact. They assert that "when there exist ten paths to the same

---

[4] Defendants spend much of their injury-in-fact discussion analyzing <u>Carney v. Adams</u>, 592 U.S. 53 (2020). <u>Carney</u> is not an Equal Protection case, and the Court finds <u>Turner</u>, <u>Clements</u>, <u>Quinn</u>, <u>Associated General Contractors</u>, and <u>Gratz</u> more on point in analyzing whether injury-in-fact is sufficiently pled.

FAIR V. PICKENS ET AL.                                          1:24-CV-115

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

destination, an individual is not 'steered away' from that
destination just because one of those paths . . . is obscured from
her view." See Opiotennione v. Bozzuto Mgmt. Co., No. 20-1956,
2021 WL 3055614, at *5 (D. Md. July 20, 2021), aff'd, 130 F.4th
149 (4th Cir. 2025)).  The plaintiff in Opiotennione, however,
brought claims under the laws of Washington, D.C. and Montgomery
County, Maryland — not under the United States Constitution.  Id.
at *1.  Providing an available "alternative" for a litigant to
pursue does not excuse the state of liability for violating the
litigant's constitutional rights.  See Fed. Election Comm'n v.
Cruz, 596 U.S. 289, 290, 298 (2022) (finding that forcing an
appellee to pursue an alternative "misses the point" and "would
require it to forgo the exercise" of a constitutional right).  To
the extent Defendants argue that Member A and Member B did not
avail themselves of the grievance process, this argument is
rejected because "federal courts cannot require exhaustion under
§ 1983." Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496,
512 (1982).  Overall, injury-in-fact has been sufficiently pled.

### b.  Causation and Traceability

"A plaintiff's injury satisfies the traceability element of
standing when there is a causal connection between the injury and
the [defendant's] conduct complained of by the plaintiff."
Disability Rights S.C. v. McMaster, 24 F.4th 893, 901 (4th Cir.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 34]**

2022) (citation and internal quotation marks omitted).  "While the defendant's conduct need not be the last link in the causal chain, the plaintiff must be able to demonstrate that the alleged harm was caused by the defendant, as opposed to the independent action of some third party not before the court."  Id. (citations and internal quotation marks omitted).  Causation is established if it is "likely that the injury was caused by the conduct complained of[.]"  Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000).  When a government enactment denies a plaintiff equal protection, that injury-in-fact is caused by it.  See City of Jacksonville, 508 U.S. at 666 n.5 (finding that it flows from the injury-in-fact analysis that the City's ordinance was the "cause" of injury).

Here, causation and traceability are satisfied because Defendants are charged with enforcement of allegedly unconstitutional State Bar Bylaws.  See Ex parte Young, 209 U.S. 123, 159 (1908) ("The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity.").  FAIR has cited specific actions that Defendants are required to take to enforce the Bylaws that are the root of Member A's and

FAIR V. PICKENS ET AL.                                                    1:24-CV-115

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

Member B's alleged injuries: the Executive Director receives nomination petitions (Am. Compl., ECF No. 27, at ¶ 20); the Executive Director identifies African Americans registered with the State Bar and notifies them of the nomination process (Id. ¶ 21); if the Executive Director does not receive a petition, the President appoints a committee to nominate two eligible African-American attorneys for that year's election (Id. ¶ 22); the President faithfully endeavors to successfully prosecute the State Bar's objects, aims, and purposes, including the election for the African American seat on the Board (Id. at ¶ 22); and the President-Elect assists the President in the execution of the outlined duties (Id. ¶ 23). Accordingly, causation and traceability are sufficiently pled.

> **2.    Member A's and Member B's interests are germane to FAIR's purpose because both seek to eliminate state-sanctioned discrimination based on race.**

The germaneness requirement for associational standing "demand[s] that an association plaintiff be organized for a purpose germane to the subject of its member's claim [to] raise[] an assurance that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." Dayton Area Chamber of Commerce v. Becerra, No. 3:23-cv-156, 2024 WL 3741510, at *5 (S.D. Ohio Aug. 8, 2024) (citing Brown Grp., Inc., 517 U.S.

26

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

at 555-56).  The germaneness requirement has no stricter standard than being "pertinent or relevant" to a plaintiff-organization's purposes.  Nat'l Constructors Ass'n v. Nat'l Elec. Contractors Ass'n, Inc., 498 F. Supp. 510, 521 (D. Md. 1980), aff'd as modified, 678 F.2d 492 (4th Cir. 1982).

Here, the amended complaint cites FAIR's purpose of "defend[ing] the principle of equal protection and equal rights for all." Am. Compl., ECF No. 27, at ¶ 8.  It claims that FAIR "engages in litigation to ensure that diversity and inclusion efforts are nondiscriminatory." Id.  FAIR alleges that it "also works at the grassroots level to promote a common culture based on equality and fairness." Id.  A lack of equal protection and fairness is the root of FAIR's allegations on behalf of Member A and Member B.  FAIR and Member A and Member B seek to eliminate state-sanctioned discrimination based on race.  Based on the record, the Court finds that Member A's and Member B's interests are germane to FAIR's purpose.[5]

---

[5] Defendants argue in their briefing that Member A's and Member B's interests are not germane because FAIR lacks evidence of "background circumstances" to support race-based discrimination claims by Member A and Member B.  In making this argument, Defendants rely on Ames v. Ohio Dep't of Youth Servs., 87 F.4th 822, 824 (6th Cir. 2023).  Ames was brought under Title VII of the Civil Rights of 1964, and it did not address germaneness or associational standing, so it has no applicability here. Regardless, the Supreme Court vacated the Sixth Circuit's judgment

FAIR V. PICKENS ET AL.                                    1:24-CV-115

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

> **3.    Member A's and Member B's participation is not required because FAIR seeks only prospective, injunctive relief regarding enforcement.**

One way the participation of individual members could be required would be if the members have diverse statuses and interests.  In <u>Maryland Highways Contractors Association, Inc. v. State of Maryland</u>, the Fourth Circuit found that the plaintiff, a highway contractors association, was not "in a position to speak for its members" on whether a law violated the constitutional and statutory rights of its members because some of the members had too diverse of statuses and interests.  933 F.2d 1246, 1252–1253 (4th Cir. 1991).  In fact, some members would have stood to benefit from the challenged law.  <u>Id.</u>  In other words, the participation of an individual member of an association could be required "when conflicts of interest among members of the association require that the members must join the suit individually in order to protect their own interests."  <u>Id.</u> at 1252.

Here, FAIR's purposes include the defense of equal protection and equal rights for all, the enforcement of non-discrimination in diversity and inclusion efforts, and the protection of its members' constitutional rights.  <u>See</u> Am. Compl., ECF No. 27, at ¶ 8.  FAIR alleges that the State Bar's racially discriminatory election

---

on June 5, 2025.  <u>See</u> <u>Ames v. Ohio Dep't of Youth Servs.</u>, No. 23-1039, 145 S.Ct. 1540 (June 5, 2025).

FAIR V. PICKENS ET AL.                                    1:24-CV-115

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]**

processes are an affront to these convictions, so the interests of

all of its members would likely be vindicated in successful

litigation to protect those principles.  Further, FAIR seeks only

prospective declaratory and injunctive relief against the

enforcement of certain State Bar Bylaws.  FAIR does not seek to

place a specific member on the Board and does not seek any other

relief specific to any individual member.  Instead, should FAIR

prevail on the merits, all of its members (who are otherwise

eligible) will be able to receive equal consideration for the Board

seat currently reserved for an African-American representative.

The Court agrees with FAIR that it adequately stands in its

Members' shoes to bring this case.

B.    **Because Defendants are sued in their official capacities, the
      only applicable immunity would be sovereign immunity, which
      was not raised by Defendants and would not apply pursuant to
      Ex parte Young.**

In an official capacity action, the personal immunity

defenses available to a public official sued in his or her personal

capacity under 42 U.S.C. § 1983 are unavailable, and the only

immunities that can be claimed are forms of sovereign immunity

that the entity may possess, such as the Eleventh Amendment:

> When it comes to defenses to liability, an
> official in a personal-capacity action may,
> depending on his position, be able to assert
> personal immunity defenses, such as
> objectively reasonable reliance on existing
> law.  See Imbler v. Pachtman, 424 U.S. 409, 96

29

FAIR V. PICKENS ET AL.                                          1:24-CV-115

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

> S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute
> immunity); Pierson v. Ray, 386 U.S. 547, 87
> S.Ct. 1213, 18 L.Ed.2d 288 (1967) (same);
> Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct.
> 2727, 73 L.Ed.2d 396 (1982) (qualified
> immunity); Wood v. Strickland, 420 U.S. 308,
> 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (same).
> In an official-capacity action, these defenses
> are unavailable. Owen v. City of
> Independence, 445 U.S. 622, 100 S.Ct. 1398, 63
> L.Ed.2d 673 (1980); see also Brandon v. Holt,
> 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878
> (1985). The only immunities that can be
> claimed in an official-capacity action are
> forms of sovereign immunity that the entity,
> qua entity, may possess, such as the Eleventh
> Amendment. While not exhaustive, this list
> illustrates the basic distinction between
> personal- and official-capacity actions.

Kentucky v. Graham, 473 U.S. 159, 166-67 (1985). The Eleventh

Amendment to the United States Constitution provides, in pertinent

part, "The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another

State[.]" Eleventh Amendment immunity also applies to "state

employees acting in their official capacity." Harter v. Vernon,

101 F.3d 334, 337 (4th Cir. 1996) (citation omitted). "[A] suit

against a state official in his or her official capacity is not a

suit against the official but rather is a suit against the

official's office. . . . As such, it is no different from a suit

against the State itself." Will v. Mich. Dep't of State Police,

491 U.S. 58, 71 (1989) (citations omitted).

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

There are three exceptions to sovereign immunity.  First, the
State may waive its right to immunity and consent to suit.  Lapides
v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 618 (2002).
The State has not done so here.  Second, "Congress may abrogate
the States' Eleventh Amendment immunity when it both unequivocally
intends to do so and act[s] pursuant to a valid grant of
constitutional authority."  Bd. of Trs. of Univ. of Ala. v.
Garrett, 531 U.S. 356, 363 (2001) (citation and internal quotation
marks omitted).  While 42 U.S.C. § 1983 provides for a federal
cause of action, it does not abrogate the Eleventh Amendment.  See
Quern v. Jordan, 440 U.S. 332, 332 (1979).  Third, pursuant to Ex
parte Young, 209 U.S. 123 (1908), and its progeny, "the Eleventh
Amendment permits suits for prospective injunctive relief against
state officials acting in violation of federal law."  Frew ex rel.
Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citation omitted).
Specifically, with respect to the Ex parte Young exception, the
Court "need only conduct a straightforward inquiry into whether
the complaint alleges an ongoing violation of federal law and seeks
relief properly characterized as prospective."  Indus. Servs.
Grp., Inc. v. Dobson, 68 F.4th 155, 163-64 (4th Cir. 2023)
(citations omitted).  "[T]he requirement that the violation of
federal law be ongoing is satisfied when a state officer's
enforcement of an allegedly unconstitutional state law is

FAIR V. PICKENS ET AL.                                              1:24-CV-115

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

threatened, even if the threat is not yet imminent." <u>Id.</u>
(citations omitted). "[I]t is sufficient that . . . [the]
[c]omplaint merely alleges the ongoing behavior." <u>Id.</u> (citation
omitted and emphasis removed).

Here, the only immunity that Defendants could have raised is
sovereign immunity, and they did not raise it. If they had raised
it, the <u>Ex parte Young</u> exception would apply. FAIR is seeking
prospective, injunctive relief to prevent the enforcement of
certain State Bar Bylaws in question, which is an ongoing activity.
Accordingly, Defendants are not entitled to sovereign immunity
(which was not raised) or any other immunities.

**C.    FAIR named the proper parties because Defendants are charged
with enforcement of the allegedly unconstitutional State Bar
Bylaws.**

The proper party in an action arising under 42 U.S.C. § 1983
includes "[e]very person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State" deprives a
person of his or her civil rights. 42 U.S.C. § 1983. "[A] state
official in his or her official capacity, when sued for injunctive
relief, would be a person under § 1983 because official-capacity
actions for prospective relief are not treated as actions against
the State." <u>Will</u>, 491 U.S. at 71 n.10 (citations and internal
quotation marks omitted). To identify proper defendants,
plaintiffs must allege "some connection" between the state

FAIR V. PICKENS ET AL.                                          1:24-CV-115

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

official and the enforcement of "an act alleged to be unconstitutional." Lytle v. Griffith, 240 F.3d 404, 409 (4th Cir. 2001) (citations omitted).

Here, FAIR has pled the required connection between Defendants and the enforcement of Bylaws 5.02(d), 5.06(b), and 5.07. Specifically, FAIR asserts that the Executive Director identifies African-American attorneys, notifies them of the nominating process, and receives their nominating petitions. Am. Compl., ECF No. 27, at ¶¶ 20–21. FAIR asserts that if the Executive Director does not receive nominations, the President must appoint a committee to make those nominations. Id. ¶ 22. FAIR asserts that the President and President-Elect are tasked with faithful execution of the State Bar's objects, aims, and purposes, which include the racial exclusion in the challenged election. Id. ¶¶ 22–23. FAIR does not seek to compel Defendants to promulgate or otherwise make changes to the Bylaws or Administrative Rules. Rather, FAIR seeks to enjoin Defendants from enforcing the complained-of Bylaws and requests a declaration that they are unconstitutional. Accordingly, FAIR has named the proper parties and has sufficiently stated its claims.

Defendants rely on Hinerman v. Daily Gazette Co., Inc. to argue that they are not public officials. 423 S.E.2d 560 (W. Va. 1992). In Hinerman, the State Supreme Court found that a State

33

FAIR V. PICKENS ET AL.                                          1:24-CV-115

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

Bar official was not a "public official" for purposes of a
defamation action.  Id. at 583.  The court also wrote,

> The state bar is merely an advisory body to
> the West Virginia Supreme Court of Appeals.
> The bar has no authority of its own.  As
> requested by this Court, the state bar can
> propose changes to the various rules of the
> Court, but its role is never more than that of
> an assistant or advisor to this Court.

Id.  Defendants also argue that they do not have independent,
individual authority to make changes to the State Bar Bylaws.  The
Court finds Hinerman unpersuasive because the term "public
official" in a defamation action is a term of art that is
inapplicable here.  By statute, the State Bar is "a part of the
judicial department of the state government[.]"  W. Va. Code § 51-
1-4a(d).  By statute, the State Bar is an administrative agency of
the State Supreme Court.  Id.  Its officers are tasked with
enforcing its Bylaws, which are promulgated by the State Supreme
Court.  Because FAIR is asserting that Defendants enforce
unconstitutional state-issued Bylaws, and because FAIR is
requesting injunctive relief, the Court finds that FAIR has named
the proper parties.

**D.  The Fifteenth Amendment applies to State Bar elections
because the elections are state-sanctioned and involve public
issues.**

The Fifteenth Amendment provides, in pertinent part, "The
right of citizens of the United States to vote shall not be denied

34

**FAIR V. PICKENS ET AL.**                                    **1:24-CV-115**

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 34]**

or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, § 1. It is "simple in command," "comprehensive in reach," "[f]undamental in purpose and effect," and "self-executing in operation[.]" Rice v. Cayetano, 528 U.S. 495, 512 (2000). In analyzing whether the Fifteenth Amendment is implicated in an election, "[t]he vital requirement is State responsibility — that somewhere, somehow, to some extent, there be an infusion of conduct by officials, panoplied with State power, into any scheme by which" individuals are "denied voting rights merely because" of their race or color. Terry v. Adams, 345 U.S. 461, 473 (1953). "The Amendment grants protection to all persons, not just members of a particular race." Rice, 528 U.S. at 512 (stating that the terms of the Fifteenth Amendment "transcend[] the particular controversy which was the immediate impetus for its enactment").

Here, the Court concludes that the Fifteenth Amendment applies to State Bar elections. FAIR has sufficiently pled that state officials have engaged in conduct by which individuals are denied voting rights merely because of their race. By statute, the State Bar is "a part of the judicial department of the state government[.]" W. Va. Code § 51-1-4a(d). By statute, the State Bar is an administrative agency of the State Supreme Court. Id. Defendants are tasked with enforcing the State Bar Bylaws, which

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO DISMISS [ECF NO. 34]

are promulgated by the State Supreme Court.  The Bylaws provide that only African Americans may vote in the election for the African-American Board seat.  Certainly, assuming that FAIR's allegations are true, this is a situation where "somewhere, somehow, to some extent," there was an "infusion of conduct by officials, panoplied with State power," into a scheme by which individuals were denied voting rights merely because of their race. See Terry, 345 U.S. at 473.

The Court's ruling is supported by Supreme Court precedent indicating that the Fifteenth Amendment applies to elections for seats on boards of state agencies.  In Rice v. Cayetano, a Hawaii law limited who could vote in an election for the governing authority of a state agency known as the Office of Hawaiian Affairs.  528 U.S. 495 (2000).  The right to vote was limited to "Hawaiians," which was defined as "those persons who are descendants of people inhabiting the Hawaiian Islands in 1778." Id. at 499.  The plaintiff, who was a Hawaiian citizen lacking the requisite ancestry to be considered "Hawaiian," challenged the provision, and the Supreme Court found that the election limitation violated the Fifteenth Amendment.  Id. at 524.

The Fifteenth Amendment also applies to elections with far less state involvement than what has been alleged here.  For instance, the Supreme Court has found that pre-primaries run by

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

self-governing private groups may implicate the Fifteenth Amendment. See Terry, 345 U.S. 461. In Terry v. Adams, the Jaybird Democratic Association, a private group whose membership was limited to white voters, conducted "pre-primary" elections. Id. at 463. Candidates who were successful in the pre-primary elections did not automatically enter the local Democratic primaries, but they "nearly always [did] so," and they almost always "won without opposition" in those primaries and in the general elections. Id. The Jaybirds contended that their elections were not regulated by the state, so they fell outside the Fifteenth Amendment's purview. Id. at 462–63. The Supreme Court, however, disagreed, finding that the elections were an unlawful attempt to duplicate election processes in order to defeat the purpose of the Fifteenth Amendment. Id. at 466. Here, taking FAIR's allegations as true, the level of state involvement far exceeds the level of state involvement found to violate the Fifteenth Amendment in Terry.

As the parties have discussed, the Fifteenth Amendment applies to, but is not limited to, "any election in which public issues are decided or public officials selected." Rice, 528 U.S. at 523 (citing Terry, 345 U.S. at 468). "All citizens, regardless of race, have an interest in selecting officials who make policies on their behalf, even if those policies will affect some groups

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

more than others." Id. Based on the explicit state involvement here, the Court believes it unnecessary to analyze whether "public issues" or "public officials" are implicated in a State Bar election. Regardless, the Court would find that they are.

The regulation of the legal profession on behalf of the State Supreme Court is a matter that concerns public issues. All West Virginia attorneys, including Member A and Member B, have an interest in the selection of Board members who make policies on their behalf. The State Bar is not a private club. It is the state agency that regulates the practice of law in West Virginia. All licensed attorneys in good standing must be members. The State Bar's self-described purposes include "protect[ing] the interests of the public" and "improv[ing] the relations between the public and the bench and the bar[.]" Exh. 2, ECF No. 36-2, at art. II. The citizens of West Virginia have an interest in the selection of the Board members, whose policies may affect them. For these reasons, the Court finds that State Bar elections are elections "in which public issues are decided." See Rice, 528 U.S. at 523.

Again, Defendants rely on an inapposite state law defamation case to claim that elected members of the State Bar's Board of Governors are not "public officials[.]" See Hinerman, 423 S.E.2d 583. As discussed earlier, "public official" is a term of art in the context of a defamation claim, so Hinerman is unpersuasive.

FAIR V. PICKENS ET AL.                                    1:24-CV-115

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

Defendants also argue that the Board elections do not involve public issues because they are not open to the public.  Terry makes it clear, however, that an election need not be open to the public to violate the Fifteenth Amendment.  For all of these reasons, the Court finds that the Fifteenth Amendment applies to State Bar elections.

**E.   FAIR did not need to file notice of a constitutional challenge because FAIR is not challenging a state statute.**

Federal Rule of Civil Procedure 5.1, in relevant part, requires a plaintiff to file a notice of constitutional question if "a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity[.]"  Fed. R. Civ. P. 5.1(a)(1)(B).  Here, Rule 5.1 does not apply because FAIR has not challenged the constitutionality of a state statute.  Instead, it has challenged the constitutionality and enforcement of various State Bar Bylaws.  Even if the challenged Bylaws could be construed as state statutes, and even if notice under Rule 5.1 were necessary, the Court finds that notice was provided because Defendants are sued in their official capacities as officers of the administrative agency of the State Supreme Court.

39

FAIR V. PICKENS ET AL.                                          1:24-CV-115

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 34]

**F.    The Court denies Defendants' motion regarding attorney's fees because the claims under 42 U.S.C. § 1983 survive.**

Under 42 U.S.C. § 1988(b), "[i]n an action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" Defendants argue that FAIR's claim for attorney's fees is inappropriate because Defendants are not public officials.  FAIR does not specifically respond to the argument regarding attorney's fees.  Because the Court has denied the motion to dismiss the claims brought pursuant to 42 U.S.C. § 1983, it will not strike or dismiss the request for attorney's fees.

## VI.   CONCLUSION

For the reasons discussed above, the motion to dismiss is **DENIED** [ECF No. 34].  The parties are **DIRECTED** to meet and confer and submit, on or before **August 20, 2025,** a proposed schedule to govern the case moving forward.

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: August 6, 2025

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA